2022 IL App (2d) 210200-U
No. 2-21-0200
Order filed June 1, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-CF-1817 |
| SAMUEL GOMEZ-GONZALEZ, | ) ) | Honorable Joseph McGraw, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court erred in granting defendant's motion to quash search warrant as the search warrant used to seize defendant's blood and urine was supported by probable cause.

¶ 2    The State appeals from the trial court's grant of defendant's motion to quash search warrant and suppress evidence. The trial court found that the affidavit accompanying the Loves Park Police's Complaint for Search Warrant provided insufficient probable cause to justify a search warrant to seize defendant's blood and urine. The State contends that the that the issuing magistrate

was provided with a substantial basis for concluding that probable cause existed to justify the issuance of a search warrant. For the reasons that follow, we reverse the trial court's ruling.

¶ 3                                    I. BACKGROUND

¶ 4     On July 14, 2018, at approximately 8:19 p.m., Loves Park police responded to report of a two-vehicle accident that resulted in the death of the driver of one of the vehicles. Following an investigation, police arrested defendant at the scene and brought him to the Loves Park Police Department. At 12:57 a.m. on July 15, 2018, police obtained the search warrant at issue in this appeal to seize the blood and urine of defendant.

¶ 5     A Complaint for Search Warrant (complaint) and an accompanying affidavit, signed and sworn to by Loves Park Police Detective Brian Cascio, was submitted to the issuing magistrate, Judge Joseph J. Bruce, on July 15, 2018. Relevant here, Cascio's affidavit recounted, in its entirety, the following:

"After first being duly sworn on oath I, Brian Cascio, depose and state the following:

1. That I am a police officer employed by the Loves Park Police Department. I have been so employed for the past thirteen years and that for the past three and a half years, I have been assigned as a Detective within the Loves Park Police Department's Detective Bureau.

2. I have been assigned to the Loves Park Police Department Detective Bureau since November 2014. During my career with the Loves Park Police Department, I have received training in investigations involving violations of the Illinois Vehicle Code from the Police Training Institute at the University of Illinois (PTI), and have been involved in the investigation of more than one hundred traffic crashes, as well as D.U.I. investigations. In my experience as a police officer, I know that blood samples and urine samples can be analyzed by labs to determine the presence of alcohol and/or illegal substances.

3. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the purpose of securing a seizure warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause for the issuance of a seizure warrant.

Officer Michael Frederickson told me the following:

4. On Saturday, July 14, 2018, at approximately 8:19 p.m., Loves Park Police Officers were dispatched to the area of North Mulford Road and North Perryville Road for what was reported as a traffic accident involving injuries. While officers were responding, they learned a subject from the accident was running on foot from the scene. When Officer Michael Frederickson arrived, he observed a gray Toyota RAV4 (Illinois registration K212484) with heavy driver's side damage in the southbound lane of North Perryville Road just south of North Mulford Road. A white Cadillac Escalade (Illinois registration 214U900) was off to the side of the road on the southbound side of North Perryville Road just south of North Mulford Road. Officer Frederickson was waved over to the southwest corner of the intersection where he found Josh Euhus, Cory Shipman, and Nick Shipman holding a subject down on the ground. The subject was identified as Samuel Gomez Gonzalez, and was taken into custody.

5. Officer Frederickson could smell a strong odor of an alcoholic beverage coming from defendant. His speech was thick tongued and slurred, and his eyes were glassy and bloodshot. Defendant refused to submit to all field sobriety testing.

6. Officer Frederickson spoke with Lisa Hays, a witness to the traffic crash. Lisa was in her vehicle northbound on North Perryville Road at North Mulford Road, and stopped for a red light. Lisa saw a white SUV drive southbound through the intersection of North Perryville Road at North Mulford Road, and crash into another vehicle. After the white SUV stopped, Lisa saw a male transfer from the driver's side of the vehicle to the passenger side, and then run from the vehicle.

Officer Lucas Limberg told me the following:

7. Officer Lucas Limberg arrived on scene at the same time as Officer Frederickson. Officer Limberg ran over to the Toyota, and observed a white female seated in the driver's seat, but slumped over onto the passenger seat. Officer Limberg tried to get a response from the driver, but was unsuccessful. Damage to the vehicle was so severe, Officer Limberg was unable to render any aid. Medical personnel would later pronounce the driver deceased.

8. Based on my training, experience, witness statements and my observations on the scene, the Cadillace was northbound on North Perryville Road at a high rate of speed and driving recklessly. The Cadillac disobeyed a red traffic control device at North Perryville Road and North Mulford Road, and collided with the Toyota, causing the fatality of the occupant of the Toyota.

9. Pursuant to the Illinois Vehicle Code, 625 ILCS 5/11-501.2(c)(2), any person arrested for violating this section is subject to chemical testing of his or her blood, breath, or urine for the presence of alcohol, other drug or drugs or intoxication compounds, or any combination thereof as provided in the section 11-501.1.

10. Pursuant to the Illinois Vehicle Code, 625 ILCS 5/11-501.6, any driver of a motor vehicle involved in a fatal motor vehicle accident or personal injury accident is required to

submit to chemical testing of his or her blood, breath, or urine for the presence of alcohol,

other drug or drugs."

Judge Joseph J. Bruce issued a search warrant at 12:57 a.m. on July 15, 2018, and defendant's

blood and urine samples were collected at 1:40 a.m.

¶ 6    Defendant was subsequently charged with fifty counts of aggravated driving under the

influence causing death, aggravated driving under the influence, reckless homicide, aggravated

reckless driving, and driving while license suspended. The bill of indictment states that defendant

had a blood alcohol concentration above .08 and the presence of cocaine was detected in his urine.

¶ 7    On October 11, 2019, defendant filed a motion to quash search warrant. The motion alleged

the affidavit was insufficient to establish probable cause to seize defendant's blood and urine

because "[a]t no point does the affidavit identify the running subject as a driver of a motor vehicle,

let alone a driver of a vehicle involved in the accident in question." The motion further alleged that

"[a]t no point does the affidavit indicate that the person Hays was alleged to have seen run from

the white SUV was the Defendant, or the same person whom was being held to the ground ***."

Defendant's motion alleged that "multiple law enforcement officers reported receiving

information from witnesses that more than one person had fled from the white SUV," a fact

defendant's motion states was know prior to the time the affidavit was prepared and submitted to

the issuing magistrate.

¶ 8    The State filed its response to defendant's motion on October 25, 2019, wherein it argued

that (1) the affidavit contained sufficient allegations to support a probable cause finding; (2)

defendant had no right to refuse chemical testing under 625 ILCS 5/11-501.1(c)(2) because

officers had probable cause to believe that defendant was the driver of a vehicle involved in an

accident resulting in death to another person; (3) the officers acted in good faith in relying on the

search warrant; and (4) the search warrant is presumed valid and defendant failed to make a substantial preliminary showing to overcome the presumption of validity.

¶ 9      On June 29, 2020, the trial court held a hearing on defendant's motion to quash the search warrant. At that hearing, Loves Park Police Officer Michael Frederickson testified he was dispatched to the scene of the crash on July 14, 2018, and arrived there at 8:14 p.m. He had received information that a Hispanic male with dark hair was involved in the crash. He observed the damaged vehicles upon his arrival at the scene before being summoned by witnesses that said three men had tackled a person seen fleeing from the white Cadillac Escalade involved in the accident. When Frederickson arrived at the spot in which the three men were holding a suspect down, he observed defendant as the person being held. Frederickson placed defendant in handcuffs and put him into Officer Hecker's nearby police squad car.

¶ 10     Frederickson testified that defendant's breath smelled strongly of alcohol, his eyes were bloodshot and glassy, his speech was thick-tongued, and he was unable to walk in a straight line. Frederickson had to help defendant walk to the squad car. While defendant was seated in the back of the squad car, Frederickson provided him with the *Miranda* warnings at 9:06 pm. Frederickson testified that it was his opinion that defendant was under the influence of alcohol and "heavily intoxicated," but acknowledged that defendant was able to respond appropriately to Frederickson's questions.

¶ 11     On cross-examination, Frederickson testified to the audio and video recordings gathered from Officer Hecker's squad car. Frederickson testified that defendant had no idea that he had been involved in a vehicle collision and instead thought he had just been pulled over by police. At 9:07 p.m. defendant told Frederickson that he was not driving the vehicle and did not know who was. Shortly after, defendant told Frederickson that he believed himself to be sitting in his own

vehicle instead of in the back Officer Hecker's squad car. Defendant then asked Frederickson where his car was located, to which Frederickson told defendant that his car was "fine" when it was severely damaged from the accident. At approximately 9:10 p.m., defendant repeatedly states that he was by himself in his vehicle. Frederickson then told defendant that many witnesses said that they saw a second person run from the Cadillac Escalade. Defendant then told Frederickson that he would like to be allowed to go to sleep before stating again that he was unaware what vehicle he was sitting in.

¶ 12    Further on cross-examination, Frederickson testified that he moved defendant from Officer Hecker's squad car at 9:35 p.m. to his own. Defendant had been handcuffed in the back of Officer Hecker's squad car for approximately 70 minutes; 40 minutes of which defendant spent slumped over and motionless. After moving defendant into the back of his squad car, Frederickson noted that defendant laid motionless there for 25-30 minutes before he roused him awake at approximately 10:25 p.m.

¶ 13    Frederickson stated that defendant had some trouble spelling his own name and refused to sign anything. After defendant refused to submit to field sobriety tests, Frederickson read him the Warning to Motorist and asked him to sign it, which defendant refused to do. Frederickson then transported defendant to the Loves Park Police Department.

¶ 14    People's Exhibit 2A and 2B, audio and video recordings of Frederickson's conversation with defendant in the back of Officer Hecker's squad car, were admitted into evidence. The recordings show that Frederickson asked defendant who was driving the Cadillac Escalade, to which defendant responded, "I have no idea." Frederickson then asked defendant where he was coming from, to which defendant responded, "I just stuck an right *** on Perryville" and then stated that he was going towards "Peak" and "was five minute away from home." When

Frederickson told defendant that witnesses observed him driving 100 miles per hour, defendant responded "there's no way" and argued with Frederickson about the actual speed the car was traveling. Frederickson told defendant that witnesses who saw him speeding admitted their own driving in excess of the speed limit and indicated that "you were passing them." Defendant responded that "I was just trying to get to my house" and provided Frederickson with his address which defendant said was "literally five minutes and a half from here." When Frederickson asked defendant "why were you guys going so fast," defendant replied "there's no way that I'm going 105 [mph]."

¶ 15    The recordings also show Frederickson informing defendant that multiple witnesses had seen him running down Mulford and cross the street before three men grabbed and held him down. Frederickson asked defendant why he ran from the vehicle. Defendant indicated that he ran because he was scared but denied having any alcohol and refused field sobriety tests. Defendant told Frederickson that "I was by myself" when asked who else was in the car. Frederickson then told defendant that multiple witnesses said a second person jumped out of the car and ran away. Defendant repeatedly answered that "I was by myself" before saying "well ok, then there's somebody in my car but there's nobody in my car." Frederickson then allowed defendant to sleep before waking him to read the Warning to Motorist at 10:07 p.m., following defendant's refusal to sign it.

¶ 16    Officer Hecker then testified that he responded to the scene of the crash on July 14, 2018, whereupon he notified emergency services personnel of the locations of the vehicles. He observed defendant being placed into his squad car which was equipped with audio and video recording devices. Hecker testified that defendant smelled strongly of alcohol and exhibited slurred speech. Defendant indicated to Hecker that he was not sure what had happened.

¶ 17 Hecker testified that he had received information that another person ran from the vehicle, but his "report" indicates that this was "later determined to be unfounded" after speaking further with witnesses and a K-9 that failed to pick up any scent leaving the scene of the accident. Hecker did admit that one witness said that they thought they saw another person flee from the scene.

¶ 18 People's Exhibit 5, audio and video recording of the Hecker's squad car while defendant was seated in it, was admitted into evidence. Witnesses on the recording tell police that the Cadillac Escalade "flew right through" and passed two cars side by side. The Cadillac Escalade was described as "hauling ass." A witness can be heard stating that "there was a little kid" that "ran off his way" and that people were "trying to find him" and described him as "maybe twelve" and that people had said he "came out of the back seat." Another witness can be heard stating that "the driver ran out" after the crash. An officer can be heard responding that "we identified the driver. The witness then states that some people "ran him down."

¶ 19 An officer can be heard on the recording asking defendant who else was in the car with him. Defendant said that the "youngest one that was with me" was his cousin named "Aaron." Defendant was unable to spell either Aaron's first or last name.

¶ 20 Following arguments on defendant's motion to quash search warrant, the trial court took the matter under advisement and continued the case to September 14, 2020, for ruling. On September 14, 2020, the trial court made the following findings in granting defendant's motion to quash the search warrant and suppress evidence related to defendant's blood and urine samples:

"A careful review of the affidavit and the information presented to the Judge failed to adequately identify [defendant] as the driver of the vehicle in question, therefore, there was insufficient probable cause to justify the search warrant."

¶ 21    On October 9, 2020, the State filed a motion to reconsider the trial court's ruling, arguing that the affidavit established probable cause and the issuing magistrate's decision was entitled to "great deference." Alternatively, the State argued that even assuming *arguendo* that the affidavit was lacking in probable cause, the application of the exclusionary rule was not warranted because there was no police misconduct. Further, the State argued that the police officers took additional steps to protect defendant's rights by obtaining a search warrant when they were statutorily permitted to obtain his blood and urine as he was subject to arrest for driving under the influence of alcohol.

¶ 22    In his response to the State's motion to reconsider, defendant reiterated his position that the affidavit in support of the warrant failed to establish probable cause because it did not state that "defendant was the driver of the motor vehicle in question." Defendant further argued that there was no reasonable articulable suspicion that he had committed a criminal offense and the suppression of his blood and urine samples was proper in order to deter police misconduct. Finally, defendant argued that the good faith doctrine should not apply in this case because (1) the issuing magistrate had wholly abandoned his judicial role; and (2) that the affidavit was so lacking in probable cause as to render the officers' official belief in its existence entirely unreasonable.

¶ 23    The trial court held a hearing on the State's motion to reconsider on March 8, 2021. Of note at the hearing, the trial court questioned defendant's counsel as to the applicability of the good faith doctrine. Defense counsel averred that the issuing magistrate "simply did not read the affidavit carefully and the affiant certainly should have known that nothing he's averred made [defendant] the driver." When asked by the trial court what would constitute the lack of good faith following the issuance of the search warrant by the magistrate, defense counsel responded

"The truth is judges don't always read affidavits carefully. The National Association for Criminal Defense Attorneys published a study recently in jurisdictions where warrants are approved electronically, they found that multipage warrants are often approved by judges in less than 30 seconds. Unfortunately, warrants don't always get read carefully. The affidavits don't always get read carefully. The officer – this was not a complex factual scenario where it would have been difficult to connect the dots."

Defense counsel went on to state that the issuing magistrate "simply didn't read it" and "presumed that there would be language in there that makes [defendant] the driver, but there's not."

¶ 24    The trial court continued the case to March 22, 2021, for ruling, whereupon it denied the State's motion to reconsider and stated "I've had a chance to give this some thought and here's how I see it. That the motion to suppress the blood draw *** [is] granted, I'm not changing my mind on that, okay."

¶ 25    On April 16, 2021, the State filed a certificate of impairment and then timely filed a notice of appeal.

¶ 26                                   II. ANALYSIS

¶ 27    The State contends that the trial court erred in granting defendant's motion to quash search warrant and suppress evidence. The State argues that Detective Cascio's affidavit was sufficient to provide the issuing magistrate with a substantial basis to conclude that probable cause existed to issue the search warrant and collect defendant's blood and urine.

¶ 28    Where, as is the case in the present appeal, the only issue is whether the complaint and supporting affidavit established probable cause, our analysis is of the issuing judge's initial determination of probable cause, not the trial court's assessment thereof on a motion to quash and suppress. *People v. Brown*, 2014 IL App (2d) 121167, ¶ 23 (citing *People v. Bryant*, 389 Ill. App.

3d 500, 511 (2009)). The reviewing court simply ensures that the magistrate had a substantial basis for concluding that probable cause existed. *Brown*, 2014 IL App (2d) 121167, ¶ 23 (citing *Illinois v. Gates*, 462 U.S. 213, 236-37 (1983)). Thus, if the complaint provided a substantial basis for the issuing judge's probable-cause determination as the State contends here, we will reverse the trial court's granting of defendant's motion to quash and suppress. See *Brown*, 2014 IL App (2d) 121167, ¶ 23.

¶ 29    A trial court's ruling on a motion to suppress presents questions of both fact and law. *People v. Manzo*, 2018 IL 122761, ¶ 25. A trial court's finding of fact is given deference when ruling on a motion to suppress and will be reversed only when those findings of fact are against the manifest weight of the evidence. *Id*. If the reviewing court accepts the trial court's factual findings, it conducts a *de novo* review of whether suppression was appropriate under those facts. *Id*.

¶ 30    The fourth amendment to the United States Constitution, made applicable to state officials through the fourteenth amendment to the United States Constitution, provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

The search and seizure clause of the Illinois Constitution provides:

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue

without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

Our supreme court has held that the search and seizure provision in article I, section 6, of the Illinois Constitution is to be interpreted in lockstep with the fourth amendment. See *Manzo*, 2018 IL 122761, ¶ 28; see also *People v. Tisler*, 103 Ill. 2d 226, 245 (1984). The fourth amendment and the Illinois search and seizure clause both set forth two underlying requirements: that searches and seizures must be reasonable and that probable cause must support search warrants. *Manzo*, 2018 IL 122761, ¶ 28 (citing *People v. Carlson*, 185 Ill. 2d 546, 553 (1999)).

¶ 31    Pursuant to federal and state warrant requirements, a detached judicial officer must resolve the question of whether probable cause exists to justify issuing a warrant. *Manzo*, 2018 IL 122761, ¶ 28 (citing *Tisler*, 103 Ill. 2d at 236). Whether probable cause exists in a particular case turns on the " 'totality of the circumstances and facts known to the officers and court when the warrant is applied for.' " *Manzo*, 2018 IL 122761 at ¶ 29 (quoting *People v. Free*, 94 Ill. 2d 378, 400 (1983)). Thus, probable cause exists in a particular case when the totality of the facts and circumstances within the affiant's knowledge at the time the warrant is applied for "was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched." *Manzo*, 2018 IL 122761, ¶ 29 (quoting *People v. Griffin*, 178 Ill. 2d 65, 77 (1997)). It is the probability of criminal activity, rather than proof beyond a reasonable doubt, that is the standard for determining whether probable cause is present. *Manzo*, 2018 IL 122761, ¶ 29 (citing *Tisler*, 103 Ill. 2d at 236).

¶ 32    The existence of probable cause is determined by "commonsense considerations that are factual and practical, rather than by technical rules." *Manzo*, 2018 IL 122761, ¶ 30 (quoting *Tisler*, 103 Ill. 2d at 236). The United States Supreme Court has explained that

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

¶ 33 A reviewing court must not substitute its judgment for that of the magistrate in construing an affidavit but must instead merely decide whether the magistrate had a substantial basis for concluding that probable cause existed. *Manzo*, 2018 IL 122761, ¶ 31 (citing *People v. McCarty*, 223 Ill. 2d 109, 153 (2006)). This court's review must not be tainted by hindsight but instead should be based upon whether " 'a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense.' " *Manzo*, 2018 IL 122761, ¶ 31 (quoting *People v. Wright*, 41 Ill. 2d 170, 174 (1968)). In determining whether an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to the warrants. *Manzo*, 2018 IL 122761, ¶ 31 (citing *People v. Stewart*, 104 Ill. 2d 463, 477 (1984)). An officer's sworn affidavit supporting a search warrant is presumed valid. *Manzo*, 2018 IL 122761, ¶ 32 (citing *McCarty*, 223 Ill. 2d at 154).

¶ 34 Defendant has the burden of proof in challenging a search warrant. *People v. McCullam*, 33 Ill. App. 3d 451, 454 (1975); 725 ILCS 5/114-12(b) (West 2018). Aside from an allusion to the fact that the affidavit would have been insufficient to establish probable cause if it contained false material, at no point in the underlying proceedings in the present case did defendant challenge the veracity of Detective Cascio's statements in the affidavit. As such, this court will view the

statements contained within the affidavit as true for purposes of this appeal. See *Manzo*, 2018 IL 122761, ¶ 32.

¶ 35    Defense counsel's recitation of the findings in some study by the National Association for Criminal Defense Attorneys notwithstanding, there is no evidence in the present case showing the search warrant was issued by a judge that was anything but neutral and detached. In *Brown*, this court reiterated the following regarding deference to an issuing magistrate:

> "[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' [Citation.] 'A grudging or negative attitude by reviewing courts toward warrants,' [citation] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' [Citation.]

> If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search. *** Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. [Citations.] We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent

with our traditional deference to the probable-cause determinations of magistrates ***."
*Brown*, 2014 IL App (2d) 121167, ¶ 23 (quoting *Gates*, 462 U.S. at 236-37).

¶ 36    Again, defendant's motion to quash the search warrant did not allege any misconduct by police, nor did it challenge the veracity of the information contained within the complaint for search warrant or the affidavit. The sole question this court must analyze is whether or not the complaint and affidavit failed to present sufficient facts to the issuing magistrate that would identify defendant as the driver of the vehicle that caused the accident on July 14, 2018. We find that it did.

¶ 37    An issuing magistrate may draw "reasonable inferences" from the information given in a search warrant application. *Manzo*, 2018 IL 122761, ¶ 36. A trial court's rejection of this commonsense reasonable inference contravenes the "preferences to be accorded for warrants."

¶ 38    Detective Cascio's affidavit and complaint for search warrant undoubtedly established probable cause that evidence of aggravated driving under the influence would be obtained from a search of defendant's blood and urine. See *supra* ¶ 5. Specifically, the affidavit provided that a named witness saw the driver of a white SUV crash into the victim's car and then exit the passenger side and flee on foot. Additionally, "while officers were responding, they learned a subject from the accident was running on foot from the scen[e]." The white SUV was parked near a named intersection. An investigating officer "was waved over to the southwest corner of the [named] intersection where he found [three men] holding a subject [i.e., defendant] down on the ground." To be sure, the affidavit would have unequivocally established probable cause to believe that defendant was the driver of the white SUV if it had also provided that the subject fleeing from the white SUV was the same subject that the three men had held down a short distance from the

2022 IL App (2d) 210200-U

white SUV. However, the magistrate was free to draw that inference based on the information provided in the affidavit and complaint for search warrant.

¶ 39   Not only was it reasonable for the issuing magistrate to make an inference from the information presented in the search warrant application that defendant was the driver of the car, but it is the only inference one could make based on the evidence presented. It strains credulity to imagine that the complaint for search warrant and affidavit could be seeking to obtain the blood and urine samples of anyone other than the suspected driver of the vehicle in question. The issuing magistrate was provided with a substantial basis to conclude that that driver was defendant and probable cause existed to issue a search warrant to obtain his blood and urine for evidence of aggravated driving under the influence.

¶ 40   Even if this court were to find that the search warrant was not supported by probable cause, suppression would still be an inappropriate remedy. In *United States v. Leon*, the Supreme Court recognized a good faith exception to the exclusionary rule, holding that exclusion of evidence was not required where a police officer acted in objectively reasonable reliance on a facially valid warrant that was later found invalid based upon a lack of probable cause. *U.S. v. Leon*, 468 U.S. 897 (1984).  Our own Illinois legislature codified the good faith exception in sections 114-12(b)(1) and (b)(2) of the Code of Criminal Procedure of 1963. Section 114-12(b)(1) states

> "If a defendant seeks to suppress evidence because of the conduct of a peace officer in obtaining the evidence, the State may urge that the peace officer's conduct was taken in a reasonable and objective good faith belief that the conduct was proper and that the evidence discovered should not be suppressed if otherwise admissible. The court shall not suppress evidence which is otherwise admissible in a criminal proceeding if the court determines

that the evidence was seized by a peace officer who acted in good faith." 725 ILCS 5/114-12(b)(1) (West 2018).

Section 114-12(b)(2) defines "good faith" as whenever an officer obtains evidence:

"(i) pursuant to a search or an arrest warrant obtained from a neutral and detached judge, which warrant is free from obvious defects other than non- deliberate errors in preparation and contains no material misrepresentation by any agent of the State, and the officer reasonably believed the warrant to be valid; or

(ii) pursuant to a warrantless search incident to an arrest for violation of a statute or local ordinance which is later declared unconstitutional or otherwise invalidated." 725 ILCS 5/114-12(b)(2) (West 2018).

¶ 41    The deterrent benefit of suppression must outweigh the social costs for exclusion of the evidence to apply. *People v. LeFlore*, 2015 IL 116799, ¶ 23 (quoting *Leon*, 468 U.S. at 907). Our supreme court in *Manzo* recognized four situations where the suppression of evidence  would be appropriate, as articulated by the Supreme Court in *Leon*: (1) where "the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Manzo*, 2018 IL 122761, ¶ 64, (quoting *Leon*, 468 U.S. at 923); (2) "where the issuing magistrate wholly abandoned his judicial role." *Id.*; (3) where a warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," that an officer could not manifest objective good faith in relying on such a warrant. *Id.*; and (4) where a warrant is so facially deficient, as in failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. *Id.*

¶ 42    None of four situations listed above situations apply to the facts of the present case. The evidence presented showed that the issuing magistrate had a substantial basis to conclude that probable cause existed to issue the search warrant to obtain defendant's blood and urine. However, even if such a substantial basis was lacking or nonexistent, this court would still find that suppression was inappropriate as Detective Cascio had a good faith belief that the search warrant was valid, and defendant never alleged that he did not.

¶ 43    Based on the foregoing, the trial court's granting of defendant's motion to quash search warrant and suppress evidence was erroneous and is reversed.

¶ 44                                        III. CONCLUSION

¶ 45    For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed, and this cause is remanded for further proceedings consistent with this order.

¶ 46    Reversed and remanded.