2024 IL App (4th) 221109
NO. 4-22-1109

FILED
February 26, 2024
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| BRANDON M. HEIBENTHAL, | ) | No. 20CF81 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Harris and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1      Following a stipulated bench trial, defendant Brandon M. Heibenthal was convicted of possession of 5 to 20 cannabis sativa plants, possession of less than 5 grams of methamphetamine, and possession of 100 to 400 grams of a substance containing methamphetamine. The trial court imposed concurrent sentences of 5 years, 4 years, and 15 years, respectively. Defendant appeals, arguing that (1) the court erred by denying his motion for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), (2) the court improperly prevented him from putting on a defense regarding the substance containing methamphetamine charge, and (3) the sentence imposed was excessive and the court considered improper factors when imposing that sentence. For the reasons that follow, we reverse and remand with directions.

¶ 2                          I. BACKGROUND

¶ 3      Defendant lived at 40 East Eighth Street in El Paso, Illinois. Defendant's sister,

Mallory Heibenthal, engaged in a video call with an inmate of the McLean County jail in June 2020, while she was at defendant's home. After watching a recording of the video call, Officer Bryan Wilkey of the El Paso Police Department swore to an affidavit requesting a search warrant for defendant's home.

¶ 4　　　　In the affidavit, Wilkey stated that he viewed the recording of the video call and recognized Mallory from previous encounters. He said that Mallory lived with defendant at the El Paso address. Wilkey could identify the residence in the video because he recognized the backyard visible in the background from his frequent patrols of the area. In the recording, Mallory lifted up a cannabis sativa plant and discussed with the inmate how to grow better plants. Wilkey also swore that Detective Evan Hinkle from the McLean County Sheriff's Office informed him that Mallory did not have a valid medical cannabis card that would allow her to grow cannabis plants.

¶ 5　　　　Police executed the search warrant in July 2020 and found seven cannabis plants on the back patio of the residence in addition to gardening accoutrements. Defendant's bedroom and attached bathroom were also searched; police there found a Pyrex dish filled with liquid and containing a glass pipe, as well as a glass dish with a white crystallized substance subsequently confirmed to be methamphetamine.

¶ 6　　　　The State charged defendant with the unauthorized possession of seven cannabis sativa plants and possession of less than five grams of methamphetamine. The State subsequently filed two additional charges in January 2021: possession of 100 to 400 grams of a substance containing methamphetamine and possession with intent to deliver the same, both Class X felonies. The charges resulted from lab reports of the liquid in the Pyrex dish. The liquid was found to weigh 160 grams and tested positive for the presence of methamphetamine. The lab reports did not quantify what percentage of the liquid was methamphetamine.

¶ 7        Defendant filed a motion to suppress the evidence secured during the search, requesting a hearing to challenge the warrant based on false statements contained in Wilkey's affidavit. See *Franks*, 438 U.S. 154. In the amended motion, defendant alleged that the affidavit contained either deliberate falsehoods or statements made with reckless disregard for the truth with regard to the averments that (1) Mallory lived at the El Paso address, (2) Mallory did not have a valid medical cannabis license, and (3) the word cannabis or cannabis sativa were mentioned during the video call. Attached to the motion was an affidavit from Mallory swearing that she had a valid medical cannabis card at the time of the call. Further, she did not reside at defendant's house but confirmed that is where she made the video call. She also stated that she never mentioned the words "cannabis sativa plant" during the call nor did she ask the inmate how to grow better cannabis sativa plants. A copy of Mallory's medical cannabis card and driver's license were also attached to the motion. Both licenses contained Mallory's address, which differed from defendant's, and both were valid during the time of the search.

¶ 8        At the hearing, defense counsel argued it was impossible as alleged in the affidavit to determine the location from which Mallory initiated the video call based on her background in the video. He also argued the words "cannabis" and "sativa" were never mentioned during the call. Counsel then explained that Wilkey and Hinkle had the ability to verify the validity of Mallory's licensure via a portal for law enforcement through the Illinois Department of Public Health's website, stating, "All *** anybody involved in the execution of this warrant [had to do] was check that active website and they would have learned that Mallory Heibenthal indeed had a medical [cannabis] card." Moreover, there was no governmental documentation that could support the assertion that Mallory lived at the El Paso address and "[i]t was an untruthful statement." The recording of the video call was not entered into evidence.

¶ 9        The State argued that defendant had failed to make the required preliminary showing. Analogizing to cases involving confidential informants, the State argued that even if Hinkle was wrong in his statement about the cannabis license, defendant had failed to show Wilkey acted intentionally or recklessly and that Wilkey was entitled to rely on information received from other members of law enforcement without corroborating that information.

¶ 10       The trial court denied defendant's motion. The court quoted *McCray v. Illinois*, 386 U.S. 300, 307 (1967), stating, "The judge issuing the warrant is concerned not if 'whether the informant lied[,] but with whether the affiant is truthful in his recitation of what he was told.'" Given this circumstance involved a named detective and not a confidential informant, Wilkey could rely on Hinkle's statement that Mallory did not have a valid medical cannabis card. The court found that whether or not Mallory had a valid medical cannabis card was irrelevant where the statements in her affidavit "actually cuts the other way" because pursuant to the Cannabis Regulation and Tax Act (Act) (410 ILCS 705/10-5(b)(8) (West 2020)), she could not grow plants at an address where she did not reside. The court then stated it was excising the statement that she lived at defendant's residence but never stated whether it was adding the information that Mallory lived at a different address. Even after removing the alleged untruths, Wilkey's statement in the affidavit that he observed cannabis plants in the video along with his recognition of Mallory and the location from the background of the video was sufficient.

¶ 11       At a subsequent pretrial hearing, defendant informed the State he intended to hire Dr. James T. O'Donnell as an expert in pharmacology to evaluate the lab results tendered for the liquid in the Pyrex dish. O'Donnell would testify that the liquid could not be considered a "substance containing methamphetamine" because it was alcohol based on his calculation of its specific gravity using numbers from the lab report and that alcohol was commonly used to clean

methamphetamine paraphernalia. Further, methamphetamine is highly soluble and dissolves completely in alcohol, so even a trace amount would cause the liquid to test positive for methamphetamine.

¶ 12 The State sought to bar O'Donnell's testimony. Among other things, the State argued that even a trace amount of methamphetamine rendered the liquid "a substance containing methamphetamine" under the statute and the composition of the liquid beyond that was irrelevant. The trial court found the issue to be a question of law to be decided by the court and that it was "black-letter clear" based on case law that "a substance containing methamphetamine" applied to any substance and included the full weight of the liquid at issue. The court barred defendant's expert from testifying.

¶ 13 Defendant proceeded to a stipulated bench trial, and the State nol-prossed the charge of possession with intent to deliver methamphetamine. The parties stipulated that Wilkey's testimony would establish that defendant was the owner of the house and the execution of the search warrant yielded seven cannabis plants on the patio along with other items used to cultivate plants. Other members of the El Paso Police Department would testify that in the bathroom attached to defendant's bedroom, they found a Pyrex dish filled with liquid and a glass pipe and they also found a glass dish with a razor blade and a white crystallized substance. Illinois State Police forensic scientist Maureen Bommarito, an expert in drug chemistry and narcotics detection, would testify that she weighed and tested the white crystallized substance on the glass dish and concluded that it was one-tenth of a gram of methamphetamine. Further, "the 160 grams of liquid from the Pyrex dish was a substance containing methamphetamine." Defendant did not stipulate to the composition of the liquid or the quantity of methamphetamine it contained. Defendant stipulated he would call no witnesses. The trial court found defendant guilty on all counts.

¶ 14   Defendant filed a posttrial motion arguing the trial court erred in barring the testimony of his expert witness and denying his request for a *Franks* hearing. In relation to the *Franks* hearing, defendant argued that the words cannabis, marijuana, and weed were never mentioned during the video call; a single plant was displayed that was under three inches tall for less than 30 seconds; there were no unique identifiers in the background and the parties to the call never stated Mallory's location; and if Wilkey or Hinkle had conducted a Law Enforcement Agencies Data System check, they would have learned not only of her medical cannabis card— they would have learned her proper address. In sum, defendant argued "[t]hat it is unfathomable that two (2) seasoned police officers who work for the State of Illinois, could not discern that Mallory had a valid Medical Cannabis License, when such a license is issued, controlled, and is searchable [within] the databases of the State of Illinois." If the falsehoods were properly excised the affidavit would simply allege that Mallory was cultivating an unknown number of plants at an unknown location. The motion was denied, and the matter proceeded to sentencing.

¶ 15   At sentencing, the State presented evidence in aggravation relating to a 2010 investigation of the overdose death of defendant's paramour and mother of his daughter. That investigation revealed that defendant and his paramour obtained heroin and consumed the narcotics. Defendant fell asleep only to wake to his paramour unresponsive; she was later pronounced dead. Defendant subsequently pleaded guilty to one count of the manufacture or delivery and one count of possession of less than 15 grams of a controlled substance and served 180 days in jail and 24 months of probation. The State also put forth evidence of a 2005 conviction for manufacture or delivery of 10 to 30 grams of cannabis resulting in probation and a 2007 conviction for misdemeanor battery resulting in 18 months of conditional discharge.

¶ 16   Defendant argued the amount of actual methamphetamine was small and for

personal use. He went on to argue that the liquid was a cleaning solution and merely contained a trace amount of methamphetamine due to cleaning his pipe in the solution. The State objected, and the trial court admonished defendant that the arguments needed to be based on the evidence presented at trial.

¶ 17    Following a short recess, the trial court ruled from the bench. For the charges of possession of methamphetamine, possession of cannabis plants, and possession of 100 to 400 grams of methamphetamine, it imposed 5-year, 4-year, and 15-year sentences, respectively, to run concurrently. The court emphasized defendant's criminal history and refused to apply the statutory factor in mitigation related to having a dependent child, stating the child could be removed from the home due to the case.

¶ 18    This appeal followed.

¶ 19    II. ANALYSIS

¶ 20    While defendant presents numerous arguments on appeal, we focus on his argument that the trial court erred in denying him a *Franks* hearing; we find that our disposition of that contention precludes consideration of his other challenges at this time. Defendant argues a remand is necessary for a *Franks* hearing where he made a sufficient preliminary showing that the affidavit supporting the complaint for search warrant contained facts that were shown to be false and those same facts were necessary to establish probable cause.

¶ 21    The fourth amendment warrant clause requires that, with certain exceptions, law enforcement must obtain a warrant from a neutral and disinterested magistrate before executing a search. *Franks*, 438 U.S. at 164. For a search warrant complaint to be sufficient, the facts stated and sworn to therein must provide information to the magistrate to support a determination of probable cause. *People v. Manzo*, 2018 IL 122761, ¶ 35 (citing *Illinois v. Gates*, 462 U.S. 213, 239

(1983)). The magistrate's issuance of a search warrant "cannot be a mere ratification of the bare conclusions of others." *Id.*

¶ 22    The United States Supreme Court in *Franks*, 438 U.S. at 155-56, made clear that in limited circumstances a criminal defendant has a right to a hearing where the veracity of an affidavit supporting a search warrant complaint may be challenged. The affidavit supporting a search warrant is presumed valid, but if a defendant makes a substantial preliminary showing that a false statement necessary for the finding of probable cause was included in the affidavit intentionally, knowingly, or with reckless disregard for the truth, a defendant will be granted an evidentiary hearing. *Id.* at 171. Where it is proven the officer-affiant has used false statements to support the search warrant in violation of the fourth amendment, suppression of the seized evidence is the sanction. See *People v. Lucente*, 116 Ill. 2d 133, 152-53 (1987).

¶ 23    "[B]ecause the defendant's burden at the *Franks* hearing itself is preponderance of the evidence, the preliminary showing may, logically, be something less." *People v. Chambers*, 2016 IL 117911, ¶ 41. A sufficient preliminary showing by a defendant to warrant a *Franks* hearing " 'lies somewhere between mere denials on the one hand and proof by a preponderance on the other.' " *Id.* (quoting *Lucente*, 116 Ill. 2d at 152). "If, after the alleged untruths in the warrant affidavit are set aside, the remaining statements in the affidavit are sufficient to establish probable cause, no hearing is required." *People v. Sutherland*, 223 Ill. 2d 187, 218 (2006) (citing *Franks*, 438 U.S. at 171-72). We review the trial court's denial of a request for a *Franks* hearing *de novo*. *Chambers*, 2016 IL 117911, ¶ 79.

¶ 24    Initially, we must address two assertions advanced by the State. First, as to the standard of review the State claims, "A reviewing court must not substitute its judgment for that of the magistrate in construing an affidavit, but must instead merely decide whether the magistrate

had a substantial basis for concluding that probable cause existed." This proposition of law is applicable in the context of a challenge to the facial sufficiency of an affidavit where a defendant states that, even taken as true, the affidavit does not support a finding of probable cause. See *Manzo*, 2018 IL 122761, ¶ 31. But we are not reviewing the finding of probable cause by the issuing magistrate. *Chambers*, 2016 IL 117911, ¶ 90. Here, the affidavit is alleged to contain falsehoods that if excised would prohibit the finding of probable cause and is controlled by the framework set out in *Franks* and reiterated in *Chambers*. As stated in *Chambers*, a court of review is as capable as the trial court in "determining whether the motion and supporting documents have made a substantial preliminary showing," so the trial court's finding is not afforded deference. *Id.* ¶ 79.

¶ 25 The State also argues that defendant has failed to properly preserve this issue for review by failing to enter the recorded jail call into evidence. We disagree. Defendant's arguments on appeal focus on the statements made in Wilkey's affidavit regarding Mallory's address and licensure status, which are capable of being addressed without the aid of the video recording.

¶ 26 Turning to the merits of defendant's arguments, a review of Wilkey's affidavit in support of the complaint for search warrant shows the request for a warrant was the culmination of an investigation into "unauthorized production or possession of cannabis sativa plants." Wilkey believed the cannabis plant seen in the recorded jail call and "potentially other cannabis plants" along with "tools and equipment" required to grow the plants would be found in the El Paso residence. He stated that Mallory lived at the El Paso address with defendant and that she did not have a valid medical cannabis card, matters that form the crux of defendant's appeal.

¶ 27 Also relevant on appeal is the Act ((410 ILCS 705/10-5 (West 2020)). In 2013, Illinois authorized a program allowing for the cultivation and disbursement of cannabis for medical

purposes. Individuals with a valid medical cannabis card are allowed to engage in the cultivation of cannabis only where they reside and "with a limit of 5 plants that are more than 5 inches tall, per household." *Id.* § 10-5(b)(1), (8).

¶ 28　　　　In light of the foregoing, we must determine whether defendant made a sufficient preliminary showing to entitle him to a *Franks* hearing. In doing so we are mindful of several conditions a defendant must meet as described in *Franks* and repeated by our supreme court in *Chambers*. First, a defendant's challenge to the affidavit " 'must be more than conclusory and must be supported by more than a mere desire to cross-examine.' " *Chambers*, 2016 IL 117911, ¶ 92 (quoting *Franks*, 438 U.S. at 171). Second, the defendant must present " 'allegations of deliberate falsehood or of reckless disregard for the truth.' " *Id.* (quoting *Franks*, 438 U.S. at 171). Third, an offer of proof must accompany the allegations and provide specificity as to the claims in the affidavit that are being challenged as false. *Id.* Finally, the defendant must provide " '[a]ffidavits or sworn or otherwise reliable statements of witnesses.' " *Id.* (quoting *Franks*, 438 U.S. at 171).

¶ 29　　　　Here, defendant made more than a conclusory challenge to the affidavit. He presented allegations that Mallory did, in fact, possess a valid medical cannabis card at the time of the search and did not live at the El Paso address; he asserted that the averments to the contrary were made with deliberate falsity or a reckless disregard for the truth. In support of these allegations, he provided a sworn affidavit from Mallory and a copy of her medical cannabis card showing it was valid during the relevant date and her Illinois driver's license. Both her medical cannabis card and her state-issued driver's license listed the same address in Bloomington, Illinois, not El Paso. At the hearing on the *Franks* motion, defense counsel argued that, based on the affidavit, there was no way of knowing whether Wilkey verified Hinkle's statement that Mallory did not have a valid medical cannabis license and that a failure to do so amounted to recklessness.

Counsel then explained that Wilkey and Hinkle had the ability to verify the validity of Mallory's licensure via a portal for law enforcement through the Illinois Department of Public Health's website. "All *** anybody involved in the execution of this warrant [had to do] was check that active website and they would have learned that Mallory Heibenthal indeed had a medical [cannabis] card."

¶ 30    Notwithstanding the foregoing, the State argues defendant failed to make a sufficient preliminary showing that Wilkey's statement Mallory did not have a valid medical cannabis card based on what he was told by Hinkle was made with reckless disregard for the truth. First, the State argues that Mallory's license was set to expire three weeks after the search warrant was executed. We fail to see the relevance of the subsequent expiration of her license.

¶ 31    Next, the State argues that because Wilkey obtained the information that Mallory did not have a valid license from a named detective, Wilkey could properly rely on that information without further corroboration. Defendant responds that the issue is not simply whether Wilkey was required to double-check information provided by Hinkle, rather the State is still responsible for any deliberate or recklessly included falsehoods via Hinkle because the government cannot "insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." *Franks*, 438 U.S. at 163 n.6.

¶ 32    We agree with defendant. Hinkle's apparently incorrect statement that Mallory did not have a valid cannabis license does not avoid scrutiny simply because it was relayed through Wilkey to the judge issuing the warrant. Both the State and the trial court analogized this situation to those involving confidential informants. In those situations, the focus is on the affiant and not the nongovernmental informant. *Id.* at 171. That is not the case here; in order to comply with the intent of *Franks*, Hinkle's statements must be subject to the same scrutiny as Wilkey's. While we

are aware of no Illinois case applying *Franks* in this manner, and the parties do not direct our attention to one, there is ample authority among the federal circuit courts of appeal. See, *e.g.*, *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994) (stating that "if the defendant establishes that the third party who provided the affiant with false information was not a 'non-governmental informant' but was a 'government agent,' a *Franks* hearing may still be in order"); *United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988) ("If we held that the conduct of *** the affiant, was the only relevant conduct for the purpose of applying the teachings of *Franks*, we would place the privacy rights protected by that case in serious jeopardy."); *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001) (noting *Franks* inquiry properly includes the evaluation of the state of mind of government actors from whom affiant receives information); *United States v. Brown*, 298 F.3d 392, 408 (5th Cir. 2002) (Dennis, J., concurring in part) ("[A] defendant is entitled to a *Franks* hearing upon making a substantial preliminary showing that a governmental official deliberately or recklessly caused facts that preclude a finding of probable cause to be omitted from a warrant affidavit, even if the governmental official at fault is not the affiant."); *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (finding "the government accountable for statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit"); *United States v. Kirk*, 781 F.2d 1498, 1503 & n.5 (11th Cir. 1986) (finding that aside from the affiant, the conduct of other government agents providing statements that were relied on by the affiant were to be considered in determining whether false statements in the affidavit were deliberately or recklessly made); *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992) ("A deliberate or reckless omission by a government official who is not the affiant can be the basis for a *Franks* suppression. The Fourth

Amendment places restrictions and qualifications on the actions of the government generally, not merely on affiants."); 2 Wayne R. LaFave, Search and Seizure § 4.4(b) n.45 (6th ed. Oct. 2022 Update) (collecting cases). We find this authority to be a logical interpretation of the requirements set forth in *Franks.*

¶ 33      "If we were to focus only on the affiant [(Wilkey's)] knowledge, police would be able to shield false information in affidavits from review simply by providing secondhand information to the drafting affiant." *United States v. Williams*, 718 F.3d 644, 652 (7th Cir. 2013). Our conclusion comports with the understanding that the fourth amendment's proscription against search and seizure without probable cause applies to government action rather than that of private citizens. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("This Court has also consistently construed this protection as proscribing only governmental action ***."). Quite simply, "a misrepresentation made by one government agent (as opposed to a nongovernmental informant) is not cleansed by another government agent's sworn signature on the affidavit." *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014).

¶ 34      The State argues that *People v. Gomez-Gonzalez*, 2022 IL App (2d) 210200-U, *People v. Curry*, 84 Ill. App. 3d 256 (1980), *People v. Fonner*, 385 Ill. App. 3d 531 (2008), and *People v. Butler*, 2021 IL App (1st) 171400, support the proposition that officers can rely on statements from other officers to form probable cause.

¶ 35      As a general proposition, we find no issue with the State's argument. The issue here, though, is not whether Wilkey was entitled to rely on Hinkle's statement—he clearly was— but that Hinkle's statement must be independently examined; it is not insulated from scrutiny by relaying the statement through another officer. The *Fonner* and *Butler* cases relied on by the State are factually distinguishable because they involve the use of common knowledge among members

of law enforcement for probable cause to *arrest* an individual. Neither of these cases involve a *Franks* challenge to an affidavit.

¶ 36    *Gomez-Gonzalez* involved an appeal from a trial court's order granting a defendant's motion to quash arrest warrant and suppress evidence where the defendant faced "fifty counts of aggravated driving under the influence causing death, aggravated driving under the influence, reckless homicide, aggravated reckless driving, and driving while license suspended." *Gomez-Gonzalez*, 2022 IL App (2d) 210200-U, ¶ 6. The trial court found that the complaint for search warrant and accompanying affidavit did not establish probable cause because the information provided " 'failed to adequately identify [the defendant] as the driver of the vehicle in question.' " *Id.* ¶ 20. A key distinction between this case and *Gomez-Gonzalez* is that the "defendant's motion to quash the search warrant did not allege any misconduct by police, nor did it challenge the veracity of the information contained within the complaint for search warrant or the affidavit." *Id.* ¶ 36. Accordingly, *Gomez-Gonzalez* is not on point.

¶ 37    *Curry*, 84 Ill. App. 3d 256, is also procedurally distinguishable from the case at bar. Similar to *Gomez-Gonzalez*, the issue in *Curry* did not revolve around false statements in the affidavit but whether the affidavit itself established probable cause. The defendant's arguments in *Curry* were that the affiant did not have the requisite personal knowledge, the affidavit was conclusory, and there was no corroboration of the assertions, qualification, and experience of another officer that was not the affiant. *Id.* at 258. In rejecting the arguments posed by the defendant the appellate court found "that a magistrate or court may rely upon information communicated between police officers of different jurisdictions without the necessity of requiring a basis for determination of their credibility." *Id.* at 259. It is important to recognize that this statement was made in the context of assessing the facial sufficiency of an affidavit and not in the

context of a *Franks* challenge. There were no allegations of deliberate falsehoods or representations made with a reckless disregard for the truth. The issue here is not the facial sufficiency of the affidavit and whether a magistrate was entitled to rely on a statement when examining the affidavit for probable cause, but whether a statement made by one officer in a different jurisdiction to another was made with a reckless disregard for the truth and thus susceptible to a *Franks* challenge.

¶ 38    The State also cites *Sutherland*, 223 Ill. 2d at 221, arguing that defendant's assertions as to what Wilkey should have done amounts to opinions of what would have been better police practice or investigation technique and does not provide a basis for a *Franks* hearing. In *Sutherland*, the officer-affiant asserted that a boot print at the crime scene was identified as coming from a " 'Texas Steer brand boot' " and that same brand of boot was found among the defendant's possessions. *Id.* at 220. The defendant argued that local authorities should have faxed a photocopy of the boot print from his boot to authorities in Montana to confirm a match with the print found at the scene before applying for a search warrant. *Id.* at 221. The court rejected this assertion finding that "as to what [the defendant] believes would have been the better police practice or investigative technique in this case does not provide a basis for a *Franks* hearing." *Id.*

¶ 39    This proposition from *Sutherland* does not insulate the allegedly false statements by Hinkle from scrutiny. Moreover, unlike *Sutherland* where the investigation involved a murder—an inherently illegal act—this situation involves statutorily sanctioned activity; in order to conclude that there was criminal behavior, authorities would have to investigate (1) whether the individual was licensed and (2) if licensed, whether the licensee was acting in nonconformance with the Act's requirements. Defendant is not alleging that some additional step in the investigation was required; he is alleging that what *was* known after excising false information was simply

inadequate to establish probable cause.

¶ 40　　　　Accordingly, defendant has overcome the affidavit's presumption of validity, and we proceed to the next step to determine whether an evidentiary hearing is required. *Chambers*, 2016 IL 117911, ¶ 93.

¶ 41　　　　Having found that defendant has met the requirements established in *Franks*, we next must determine whether, after setting aside the alleged untruths, the affidavit remains sufficient to establish probable cause. *Id.* Removing the assertions that Mallory lived at the address with defendant and that she did not have a valid medical cannabis card leaves the affidavit claiming that Mallory was growing cannabis plants at the alleged address in El Paso. Effectively, the facts sworn to by Wilkey, after removing the alleged untruths, are insufficient to establish probable cause as none of the actions alleged equate to illegal conduct under the Act. The actions alleged only become illegal when the cultivator is alleged to either lack proper licensure or, if properly licensed, cultivation is done outside the requirements of the Act. Quite simply, Wilkey's averment that Mallory did not have a valid medical cannabis card was the linchpin in a finding of probable cause in light of the surrounding facts.

¶ 42　　　　The State argues that the fact seven cannabis plants were found at the address during the subsequent search supports a finding of probable cause. See 410 ILCS 705/10-5(b)(1) (setting a cultivation limit of five plants over five inches tall for licensees). However, it is fundamental that that we must ignore the fruits of the search when determining whether the affidavit establishes probable cause. See *Manzo*, 2018 IL 122761, ¶ 29 ("Whether probable cause exists in a particular case turns on the ' "totality of the circumstances and facts known to the officers and court when the warrant is applied for." ' " (quoting *People v. Tisler*, 103 Ill. 2d 226, 236 (1984), quoting *People v. Free*, 94 Ill. 2d 378, 400 (1983))); *Chambers*, 2016 IL 117911, ¶ 81

(stating that when determining the sufficiency of the preliminary showing for a *Franks* hearing the guilt or innocence of the defendant as well as whether the officer's suspicions about the presence of contraband were vindicated are irrelevant).

¶ 43        The State also argues that the fact that the cannabis plant was shown on the video call supports the inference that the plant was not being grown in a secured, locked space as required by the Act. See 410 ILCS 705/10-5(b)(1), (2), (4) (West 2020). Initially, we must note that in Wilkey's affidavit he states that he believed a search of the El Palso residence would yield evidence of violations of the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 2020)). Allowing the State to now allege that supposed violations of a different statute would somehow retroactively satisfy probable cause is questionable at best. Even indulging the State, we disagree that merely displaying the plant during a video call establishes that the plant is not being cultivated in a secure location or that it was being stored or placed in an area subject to ordinary view by the public, nor was such alleged in Wilkey's affidavit.

¶ 44        Further, the State argues that, without the statement that Mallory lived with defendant at the address listed, probable cause is established because she could not legally grow cannabis at defendant's residence. We are unable to come to the same conclusion, as once the statement she lived at the residence is excised, an independent magistrate would be left with no information as to Mallory's residence and whether she was violating the Act. Here, defendant is challenging the reckless inclusion of allegedly false statements. In the face of such a challenge, "[i]f, after the alleged untruths in the warrant affidavit are set aside, the remaining statements in the affidavit are sufficient to establish probable cause, no hearing is required." *Sutherland*, 223 Ill. 2d at 218.

¶ 45        Defendant is not alleging that law enforcement had knowledge of Mallory's address

and purposely or recklessly omitted that information; instead, his challenge effectively argues that law enforcement performed the investigation with a reckless disregard for the truth and in doing so failed to confirm any of the information provided in the affidavit supporting the complaint for search warrant as it relates to Mallory. Given defendant's challenge relates to the reckless inclusion of a falsehood, not an omission, and does not allege law enforcement had knowledge of Mallory's address, we will only strike the alleged falsehood and will not include additional information. See *Manzo*, 2018 IL 122761, ¶ 29 (stating probable cause exists based on the totality of the circumstances and facts known to the affiant when the warrant is applied for); see also *Tisler*, 103 Ill. 2d at 236; *Free*, 94 Ill. 2d at 400.

¶ 46    The State also asserts that "[t]here is no indication whatsoever that defendant who owned the residence had a medical cannabis card." This is true. But, at this point we are concerned with the contents of the affidavit once the alleged untruths are excised, and Wilkey did not assert that defendant himself did not have a valid medical cannabis card. Accordingly, the affidavit was insufficient to establish probable cause once the alleged untruths were removed.

¶ 47    Therefore, we withhold disposition of the remaining issues on appeal and remand this matter to the trial court for the sole purpose of holding a *Franks* hearing within 90 days of the issuance of this order. We retain jurisdiction to review the court's ruling following remand and to address the remaining issues raised by defendant on appeal pending the outcome of the *Franks* hearing. In the event that defendant's challenge pursuant to *Franks* is not sustained, we direct the court and clerk of the circuit court to transmit the transcripts of that hearing and any other new pleadings or orders to this court as a supplement to the record. In the event that defendant's challenge is sustained, we direct the court and clerk of the circuit court to transmit the resulting order to this court.

¶ 48                               III. CONCLUSION

¶ 49            For the reasons stated, we reverse the trial court's judgment and remand for further

proceedings that conform with this opinion.

¶ 50            Reversed and remanded.

*People v. Heibenthal*, 2024 IL App (4th) 221109

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Woodford County, No. 20-CF-81; the Hon. Charles M. Feeney, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Katherine M. Donahoe, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Gregory Minger, State's Attorney, of Eureka (Patrick Delfino, Edward R. Psenicka, and Diane L. Campbell, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |